**E-FILED**
Monday, 21 July, 2008  04:30:43 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

UNITED STATES OF AMERICA

     Plaintiff,

v.

KEITH HARRIS,

     Defendant

No.: 07-20103

## BENCH MEMO IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

### 1. STATEMENT OF THE ISSUE

Was the  initial attempt to stop the defendant supported by reasonable suspicion of criminal activity?

### 2. STATEMENT OF THE FACTS (as derived from discovery only)

October 7, 2007 at 1:12 AM Champaign Police Department Officer Kristina Benton pulled on to Walnut Street from Beardsley on the north side of Champaign, Il. She observed a black male riding a bicycle without a headlight in the street in front of 1104 N. Walnut.

At the time there were approximately ten people hanging out in the yard of 1104 N. Walnut. This address was known to Benton as one where numerous citations had been issued for illegal drug sales, fights, and shots fired.

As Benton's car pulled closer, the subjects scattered, some going into the house and others walking away on foot. The defendant Keith Harris, the individual on the bike, drew Benton's attention as Harris started riding away very quickly to the north on his bike (in the opposite direction from Benton).

Harris was ordered by Benton to stop. He did not. Benton pursued with active overhead lights and siren. Harris continued on, eventually tried to escape through an empty lot, where he tripped and fell and was secured and arrested.

A loaded handgun was found in defendant's path of flight.

## 3. LEGAL AUTHORITY

1. A brief Terry stop requires the officers to have  specific and articulable facts, which, taken together with the rational inferences drawn from them reasonably warrants the intrusion. The Terry issue arises only after a "seizure". If there is no seizure, then there is no stop, and no constitutional right comes into play: it is merely a consensual encounter. **United States v Yusuff**, 96 F.3d 982, 985 (7th Circuit 1996)

2. Where an officer commands a suspect to obey, such as where he orders him to stop, there has been a seizure under the Fourth Amendment. **United States v. Quinn,** 83 F.3d 917, 921 (7th Cir. 1994)

3. Reasonable suspicion is more than a hunch. **United States v. Ienco**, 182 F. 3d 517, 523 (7th Cir. 1999)

4. The Court examines the totality of the circumstances when examining the reasonableness of the stop. **United States v. Swift**, 220 F. 3d 502, 506 ( 7th Cir.  2000)

5. The Court limits the inquiry to those facts the officer knew at the time the he made the seizure.  **United States v. Odum** 72 F.3d 1279, 1284 (7th Circuit 1995)

6. The defendant's " mere propinquity" to others involved in criminal activity does not by itself justify an investigative detention of the defendant. **United States v. Price**, 184 F.3d 637, 642 (7th Cir 1999)

## 4. ARGUMENT

This motion is shortly disposed if the Court finds Harris' lack of a light on his bike violated a city ordinance and thus justified the stop.

Yet, the stop, viewed in the totality of the circumstances, seems to show that Officer Benton only initiated the stop (exiting her patrol car and telling Harris to stop) after she recollected that the house in front of which Harris drove was a crime den. The discovery appears to show that Benton became suspicious of Harris, not because he had no bike light, but rather, because he drove his bike in front of the crime den where many subjects had gathered.

As noted above, the reasonableness of the stop is evaluated from the facts known to the police before the defendant flees. The flight can not justify the stop , there must be specific articulable facts preceding the flight. What were those facts here?

Benton knew Harris was riding a bike without a headlight on a street in front of a crime den. She suspected Harris because he was near to a crime den, there were others present, and when she pulled her patrol vehicle up, Harris headed in the other direction very quickly.

Is that reasonable suspicion?

Although factually distinguishable in many ways, **United States v. Johnson**, 170 F.3d 708 ( 7th Cir. 1999) is somewhat helpful (even given a stinging dissent by Judge Easterbrook).

In **Johnson**, the police officers had been notified by a citizen advisory group that drug activity was occurring at an apartment building. The group had received this information from the property manager of the building. Those reporting to the police had no personal knowledge, only hearsay, and there was no showing that the hearsay was reliable. Even the property manager relied on hearsay.

In the case at bar, Benton appears to have reliable hearsay, as citations had actually been issued by the police to the subject property. Additionally numerous individuals swarmed in front of the crime den in the early morning hours, when law abiding citizens usually are asleep.

Based on that information (as well as information from a maintenance worker on site as to significant traffic in and out of the apartment) the officers in **Johnson** approached the subject premises. They intended to knock on the door, hoping for someone to come to the door and allow them consensual entrance for a view of any contraband in plain view. Just prior to the officers knocking upon the door, Johnson unexpectedly emerged from the door of the apartment, an encounter ensued, and Johnson, not particularly cooperative, tried to leave, at which time he was powered to the floor and cuffed. A subsequent search of Johnson's person yielded a gun and crack.

The Court of Appeals held the officers had only a generalized suspicion insufficient for a Terry stop. Indeed, the officers in **Johnson**, said the Court, were conducting the type of general stop prohibited by the Fourth Amendment.

Here, Benton initiated her Terry stop, apparently, based on Harris' presence near a crime den in the early morning hours; the presence of others in front of the crime den, and Harris' quick retreat in the opposite direction from the approaching Benton.

Benton had made her decision to stop Harris on those facts: what she knew at the time. Her shout to Harris to "stop" was indeed a stop for Terry purposes. The subsequent flight, pursuit, and arrest yielded the gun, which Harris requests the Court suppress.

WHEREFORE, Defendant respectfully requests the entry of an Order barring the

Government from introducing said evidence at trial.

Respectfully Submitted,

Keith Harris, Defendant


RICHARD H. PARSONS
Federal Public Defender

s/John Taylor

BY:_____
JOHN TAYLOR
Assistant Federal Public Defender
300 West Main Street
Urbana, Illinois 61801
Telephone: (217) 373-0666
Facsimile: (217) 373-0667
Email: John_Taylor@fd.org

### *CERTIFICATE OF SERVICE*

I hereby certify that on July 21, 2008, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to Assistant United

States Attorney Ronda Coleman.

                     s/John Taylor

                     _____

                     JOHN TAYLOR
                     Assistant Federal Public Defender
                     300 West Main Street
                     Urbana, Illinois 61801
                     Telephone: (217) 373-0666
                     Facsimile: (217) 373-0667
                     Email: John_Taylor@fd.org

I:\Clients - Open Files\Harris, Keith\bENCH mEMO IN sUPPORT OF mOTION TO SUPPRESS.wpd