E-FILED
Friday, 22 August, 2008  12:49:22 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 07-20103 |
| ) | |
| KEITH HARRIS, ) | |
| ) | |
| Defendant. ) | |

**RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
ARREST AND EVIDENCE**

Now comes the United States of America, by its attorneys, Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Assistant United States Attorney, Ronda Holliman Coleman, in response to the Defendant's Motion to Suppress Arrest and Evidence, filed pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, states as follows:

**RELEVANT FACTS**

1. On October 7, 2007, a little after 12:00 am, Champaign City Police Officer Kristina Benton was on patrol in her marked squad car in the area of 1100 N. Walnut in Champaign, Illinois.

2. As she pulled onto Walnut from Beardsley, she observed a black male riding a bicycle without a headlight in the street in front of 1104 N. Walnut.

3. The officer also observed approximately ten people hanging out in the yard of the address. Officer Benton knew the address of 1104 N. Walnut to be cited for numerous complaints involving illegal drug sales, fights and shots fired.

4. As the Officer pulled closer to the address in her marked squad car, everyone outside of the address began to scatter, with some subjects running inside the home and several others walking away on foot. Officer Benton's attention was drawn

to the male on the bicycle because he started riding his bike very quickly away from the area. He was later identified as Keith Harris.

5. The officer got out of her squad and told Harris to stop. Harris looked at the officer and continued to ride north on Walnut towards Bradley at a faster pace. Officer Benton returned to her car and activated her overhead lights and siren and followed Harris onto Bradley Avenue. Harris started to move at a faster pace.

6. At that time, a second officer also activated his lights in an attempt to get Harris to stop. Harris looked over his shoulder at the pursing officer but continued to pick up his pace on the bike as he crossed onto Market Street.

7. Harris went into an open field where the officers continued to follow him in their squad cars. Harris fell off his bike then began running across the field until he fell down a large ravine. Harris continued to run from several officers and was finally apprehended after a foot chase.

8. When officers apprehended Harris, they observed a plastic baggie hanging out of Harris's pocket. The substance appeared to be cannabis, and later field tested positive for the presence of cannabis.

9. Officers also located a black semi automatic handgun in the path taken by Harris.

## ARGUMENT

10. In his motion to suppress evidence and arrest, the defendant seeks to suppress the handgun found at the time of arrest because he argues the arresting officers had no reasonable suspicion that the defendant was involved in criminal activity at the time they initiated the pursuit.

11. The defendant's argument fails for two reasons: (1) Officer Benton, in light of the traffic violation, riding a bicycle at nighttime without a lamp, had probable cause to believe that a traffic violation had occurred therefore the officer could detain Harris. *United States v. Whren,* 517 U.S. 806 (1996) ; and (2) while Harris's presence in a high crime area standing alone is not enough to support reasonable suspicion of criminal

activity, that fact along with his headlong flight from the police and further acts of evasion, gave the officer reasonable suspicion to pursue Harris in order to conduct a Terry stop. *Illinois v. Wardlow*, 528 U.S. 119 (2000).

I.  **THE POLICE OFFICER COULD TEMPORARILY DETAIN HARRIS BECAUSE THERE WAS PROBABLE CAUSE TO BELIEVE A TRAFFIC VIOLATION HAD OCCURRED.**

   12.   The City of Champaign has adopted the State Vehicle Code by reference in its municipal code at Article II, section 33-16(a). The City adopted by reference all provisions of Chapter 11, entitled "Rules of the Road" of the State Vehicle Code. The Code requires that "every bicycle when in use at nighttime shall be equipped with a lamp on the front which shall emit a white light visible from a distance of at least 500 feet to the front"., *625 ILCS 5/11-1507.*

   13.   In the instant case, Officer Benton observed the defendant to be riding the bicycle at nighttime without a headlight. A "police officer may temporarily detain a motorist when there is probable cause to believe that the motorist has violated a traffic law,"see *U.S. v. Rowell*, 2007 WL 1206727 (C.D. Ill 2007), quoting *U.S. v. Muriel,* 418 F.3d 720,724 (7th Cir. 2005). The defendant had violated a traffic law thus the officer could detain him.

   14.   The defense also argues that Officer Benton had other subjective reasons for wanting to detain Harris. It does not matter what other subjective reasons the officer may have had as the "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," *Rowell*, quoting *U.S. v Whren* 517 U.S. at 813. So although Officer Benton may have been suspicious of the defendant based on his location, it does not matter when there was a clearly identifiable traffic violation that was occurring in front of the officer.

II. **THERE WAS REASONABLE SUSPICION THAT THE DEFENDANT WAS INVOLVED IN CRIMINAL ACTIVITY TO WARRANT A *TERRY* STOP.**

15. An officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has reasonable articulable suspicion that criminal activity is afoot. *Terry v. Ohio,* 392 U.S. 1, 30 (1968). Reasonable suspicion has been intereprted to be a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989). The Fourth Amendment requires at least a minimal level of objective justification for making the stop. *Id.*

16. In, *Illinois v. Wardlow*, the Supreme Court considered if there was reasonable suspicion when the subject who was in a high crime area, upon noticing police, then proceeded to flee. 528 U.S. 119 (2000). The Court recognized that an individuals presence in an area of expected criminal activity, standing alone, is not enough to support reasonable suspicion. *Id.* at 124. But police officers are not required to ignore the relevant characteristics of a location and can consider the fact that the stop occurred in a high crime area as that is relevant consideration in a *Terry* analysis. *Id.* at 124. In *Wardlow*, the Court also recognized it was not just the mere presence in the high crime area that aroused the officer's suspicion, but the unprovoked flight of the defendant upon noticing the police. *Id.* Courts have recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion and headlong flight is the consummate act of evasion and it is certainly suggestive of wrongdoing. *Id.* at 124. The Court concluded that the officer was justified in suspecting the defendant in *Wardlow* was involved in criminal activity and could therefore investigate the matter further without violating his Fourth Amendment rights. *Id.* at 125. *Terry* recognizes that the officers can detain individuals to resolve the ambiguity and if they learn facts that rise to the level of probable cause, the individual can be arrested. *Wardlow* at 125, and *see Terry v. Ohio*, 392 U.S. 1, 30 (1968).

17. In the instant case, the facts are very similar to those in *Wardlow*. *See also U.S. v. Lawshea*, 461 F.3d 857 (7th Cir. 2006). Harris was not just seen in a high crime area, but at a specific residence that was associated with high crime as known by Officer Benton. As she pulled towards the address, several people including the defendant immediately started to flee. When Officer Benton attempted to speak to Harris, he looked at her and continued to flee at a faster pace. Other officers attempted to detain Harris, and he continued to flee and evade the officers. The defendant's presence in a high crime area along with his headlong flight and continued evasion was suggestive of wrongdoing and thus the officers were justified in attempting to conduct a *Terry* stop. Once the defendant was detained, probable cause to arrest arose almost immediately when the officers found the suspected cannabis and then right thereafter, the handgun.

## CONCLUSION

Based on the foregoing reasons, the United States of America respectfully requests that this Court deny the defendant's motion to suppress evidence.

Respectfully submitted,

RODGER A. HEATON
UNITED STATES ATTORNEY

s/ Ronda Holliman Coleman
RONDA HOLLIMAN COLEMAN
Bar No. IL 6272417
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
217/373-5875
FAX: 217-373-5891
ronda.coleman@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>John Taylor
>Assistant Federal Public Defender
>300 West Main Street
>Urbana, IL 61801

>s/ Ronda Holliman Coleman
>RONDA HOLLIMAN COLEMAN
>Bar No. IL 6272417
>Assistant United States Attorney
>201 S. Vine St., Suite 226
>Urbana, IL 61802
>217/373-5875
>FAX: 217-373-5891
>ronda.coleman@usdoj.gov